# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

KAREN FRY,                              )
                                        )
     Plaintiff,           )
                                        )
      v.                )     Case No. 3:17-cv-00671-MGG
                                        )
NANCY BERRYHILL                         )
Acting Commissioner of Social Security, )
                                        )
     Defendant.           )
                                        )

## OPINION AND ORDER

Plaintiff Karen E. Fry (Parks)[1] seeks judicial review of the Social Security Acting
Commissioner's decision denying her application for Title II disability insurance
benefits ("DIB"), and Title XVI supplemental security income ("SSI") as allowed under
42 U.S.C. § 405(g). This Court may enter a ruling in this matter based on parties' consent
pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons below, the
Court reverses the decision of the Acting Commissioner of the Social Security
Administration and remands this case for further proceedings consistent with this
opinion.

## I.   OVERVIEW OF THE CASE

Fry alleges an onset of disability on January 31, 2011, which was caused by
severe anxiety, diabetes, psychotic episodes, depression, panic attacks, paranoia, high

---

[1] Ms. Fry divorced after applying for disability benefits and changed her name to Karen Parks. [DE 8 at
234]. The Court will refer to her in this order by her name at the time of her application.

cholesterol, and breast cancer that was in remission. Other health conditions noted in the record included obesity, mild neuropathy of hands and feet, hypothyroid, and acute rhabdomyolysis. On the date of the alleged onset of her disability, Fry was forty-five years old, which meets the regulatory definition of a younger individual; however, at the time of her hearing, she turned fifty, which places her in the "person approaching advanced age" category for purposes of social security benefits. [DE 11 at 223]. She completed an Associate's degree and has worked as a license agent clerk and cashier. [*Id.*] Fry has not engaged in substantial gainful activity since January 31, 2011, the alleged onset date. [*Id.* at 212].

Fry's application for DIB and SSI of August 22, 2013, were denied initially and upon reconsideration. Following a video hearing on May 3, 2016, the Administrative Law Judge ("ALJ") issued a decision affirming the Social Security Administration's denial of benefits. The ALJ found that Fry was unable to perform any past relevant work. [*Id.* at 223]. However, the ALJ found that Fry has the residual functional capacity ("RFC") to perform medium work as defined by the regulations[2] [*Id.* 214].  Based upon the testimony of the vocational expert, Fry's age, her education, her work experience, and her RFC, the ALJ found Fry is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. [*Id.* at 225]. Based upon these findings, the ALJ denied Fry's claims for benefits.

Other facts will be included as necessary.

---

[2] Regulations governing applications for DIB and SSI are found in 20 C.F.R. Part 404 and Part 416, respectively. For the sake of clarity and efficiency, this order will refer only to 20 C.F.R. § 404.

## II. DISABILITY STANDARD

The Acting Commissioner follows a five-step inquiry in evaluating claims for

disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant
> has a severe impairment; (3) whether the claimant's impairment is one
> that the Commissioner considers conclusively disabling; (4) if the claimant
> does not have a conclusively disabling impairment, whether he can
> perform his past relevant work; and (5) whether the claimant is capable of
> performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (*citing* 20 C.F.R. § 404.1520). The

claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227

F.3d 863, 868 (7th Cir. 2000).

## III. STANDARD OF REVIEW

This Court has authority to review the Acting Commissioner's decision under 42

U.S.C. § 405(g). However, this Court's role in the judicial review of Social Security

Administration cases is limited, and it is not permitted to reweigh the facts or evidence.

*Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  The Court must give deference to the

ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745

F.3d 802, 806 (7th Cir. 2014) (*citing Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The

ALJ's decision must reflect that he built a "logical bridge from the evidence to his

conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). The deference for the

ALJ's decision is lessened where the ALJ's findings contain error of fact or logic, or fail

to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an

inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Moreover, the ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace a path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to her conclusions, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), the ALJ must at least provide a glimpse into the reasoning behind her analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgement for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

## IV.    ANALYSIS

At Fry's request, the ALJ conducted a hearing at which Fry testified regarding her psychiatric and physical health issues, and a vocational expert testified about the availability of jobs in the national economy, given Fry's impairments.

Following the hearing, the ALJ issued a written decision based upon the five-step disability evaluation process prescribed by the Social Security Administration's regulations[3], finding that Fry was not disabled and denying her disability benefits. At Step One of the ALJ's analysis, she determined that Fry had not engaged in substantial gainful activity since the alleged disability onset. At Step Two, the ALJ found that depression and anxiety disorders were Fry's severe impairments. At Step Three of the evaluation, the ALJ concluded that Fry's impairments did not meet or medically equal any of the listed impairments.

Before proceeding to Step Four, the ALJ analyzed Fry's RFC and concluded that Fry had the ability to perform medium work, and could lift and carry fifty (50) pounds occasionally and twenty-five (25) pounds frequently. In addition, the ALJ held that secondary to mental impairments, Fry could understand, remember, and carry out detailed but uninvolved work instructions, commensurate with unskilled work. Further, the ALJ found that Fry could sustain attention for two-hour segments of time in an eight hour day. Next, the ALJ held that Fry could tolerate brief and superficial contact with others, and only occasional, brief, and superficial contact with the public.

---

[3] 20 C.F.R. § 404.1520

Finally, the ALJ found that Fry could adapt to changes as needed in an unskilled work setting.

At Step Four of the process, the ALJ, relying in part on the testimony of a vocational expert, found that Fry was unable to perform any past relevant work. At Step Five, the ALJ, in consideration of Fry's age, education, work experience, and RFC, determined that Fry was not disabled, because there were jobs that existed in significant numbers within the national economy that Fry could perform.

After receiving an unfavorable determination by the ALJ, on May 27, 2016, Fry filed a request with the Appeals Council to review the decision and submitted additional evidence for review. On June 28, 2017, the Appeals Council denied her request for review of the ALJ's decision. The Appeals Council's decision indicated that the new information upon which Fry had based her request for review was about a later time, a time after the ALJ's decision was issued on May 27, 2016; therefore, the new information does not affect the ALJ's disability determination for the period beginning on or before May 27, 2016. [DE 11 at 6]. With the Council's denial of Fry's request, the ALJ's May 27 determination became the final decision of the Acting Commissioner.

A.      Issues for Review

This case represents a tale of inconsistency. Fry challenges the ALJ's decision and seeks reversal and remand on three primary issues. First, she argues that substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding. [DE 20 at 7]. Second, Fry contends that the ALJ's evaluation of her subjective complaints is deficient. [*Id.* at 14]. Third, Fry alleges that she submitted new and material evidence to

the Appeals Council that she thinks creates a reasonable possibility that the Acting Commissioner would have reached a different conclusion had the evidence been considered. [*Id.* at 17-19].

Having reviewed the ALJ's decision, the Court agrees with Fry that the ALJ's RFC finding is not supported by substantial evidence. However, the Court disagrees with Fry regarding the finding of the Appeals Council.

**B.      RFC Analysis**

**1.      ALJ's RFC Findings**

If a person is found to be disabled at Step Three, the ALJ will make a finding as to the claimant's RFC before moving on to Step Four. *See* 20 C.F.R. § 404.1520(a)(4)(iii)-(iv). The RFC is an administrative assessment of the claimant's impairments, and any related symptoms, that affect what the claimant can do in a work setting. Specifically, the RFC is the most that the claimant can still do despite his or her limitations, based upon all the relevant evidence and the claimant's medical record. 20 C.F.R. § 404.1545. All impairments are taken into consideration, at this point in the process, not just those that have been previously determined to be severe. 20 C.F.R. § 404.1545(a)(2). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1512(c). However, the claimant retains the burden to provide the ALJ with medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1545.

In this case, the ALJ found:

> [a]fter careful consideration of the entire record . . .
> [Fry] has the residual functional capacity to perform
> medium work as defined in 20 C.F.R. § 404.1567(c) and
> 416.967(c). [Fry] could lift/carry 50 pounds
> occasionally and 25 pounds frequently. Secondary to
> mental impairments, [Fry] could understand,
> remember, and carry out detailed but uninvolved
> work instructions, commensurate with unskilled
> work. [Fry] could sustain attention for two hour
> segments of time in an eight hour day. [Fry] could
> tolerate brief and superficial contact with others, and
> only occasional, brief and superficial contact with the
> public. She could adapt to changes as needed in an
> unskilled work setting.

[DE 11 at 214-15]. Fry argues the ALJ interpreted the Medical Source Statement ("MSS")

provided by Dr. Coulter, a consultative examiner, based upon the least, rather than the

most, Fry could perform in contradiction to Dr. Coulter's opinion, which indicated

neither that the limitations were Fry's minimum nor maximum RFC. [DE 20 at 8]. Fry

claims that in so interpreting the consultative examiner's report on Fry, and finding a

medium or light RFC without the required guidance or support in the record, the ALJ

improperly filled in the evidentiary gap on her own.

### 2. RFC to Perform Medium Work

At Step Four of her evaluation, the ALJ determined, pursuant to 20 C.F.R.

§ 404.1520(f), that Fry "is unable to perform any past relevant work." [DE 11 at 223]. The

ALJ indicated in her decision that Fry's past relevant work included license agency

clerk and cashier, both classified as light, semi-skilled. [*Id.*]. Despite this finding, the ALJ

indicated that Fry's RFC was medium, rather than light, work. The Court cannot trace

the ALJ's logical path from a determination that Fry has the RFC to perform medium

work to a determination that she cannot perform past relevant work classified as unskilled, light work in Step Four. This is a critical flaw in the ALJ's logical bridge between the evidence and her conclusion.

Although the ALJ comprehensively detailed Fry's physical impairments and hospitalizations [DE 11 at 219], the ALJ failed to articulate why Fry would be able to lift and carry fifty (50) pounds occasionally and twenty-five (25) pounds frequently in her RFC. There is no evidence cited by the ALJ to support this level of capability for Fry, in light of the determination made in Step Four with regard to past relevant work. The ALJ determined that Fry had severe impairments, but concluded that these were not work-precluding limitations. [*Id.* at 221].

To support her analysis, the ALJ gave some weight to a June 2011 physical examination report that included a medical source statement "based on the least (versus the most) the claimant could perform as the claimant had no limitations on examination." [*Id.*]. The ALJ also gave great weight to State agency medical consultants who found no severe impairment. Based largely upon this evidence, the ALJ concluded that Fry should avoid heavy work, and, consequently, that a range of medium work is indicated for Fry. [DE 11 at 221]. According to 20 C.F.R. § 404.1567(c), "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." There is nothing in the Medical Source Statement ("MSS") provided by Dr. Coulter, or the other medical evidence cited by the ALJ, that would suggest that Fry was physically able to lift or carry twenty-five (25), much less fifty (50), pounds frequently. Although the consultative examiners referenced by the

ALJ conclude no severe impairments, only Dr. Coulter's gives any indication of Fry's capability to lift and carry, and the values that he provided were significantly less than fifty (50) pounds. Dr. Coulter found that Fry was positive for numbness and tingling in her feet from neuropathy. [*Id.* at 840]. In his MSS, Dr. Coulter indicated that Fry was "able to maintain balance during ambulation while carrying object less than 10lbs. Able to lift/carry less than 10lbs. or over 10lbs. occasionally. Able to stand/walk 2 hours in an 8 hour day." [*Id.* at 841]. In fact, the MSS upon which the ALJ relied is more consistent with a finding of Light Work, which:

> Involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

The apparent inconsistencies in the ALJ's conclusion that medium work is indicated for Fry are further aggravated by the ALJ's ultimate conclusion at Step Four that Fry "is unable to perform any past relevant work," all of which was at the light, semi-skilled levels. [DE 11 at 223]. The Court finds it difficult to follow the logical path used by the ALJ in arriving at a medium work determination for Fry, based upon the evidence cited by the ALJ in her decision, and the seemingly inconsistent determination made by the ALJ at Step Four.

Fry alleged in her Opening Brief that the ALJ "misinterpreted the medical source statement" of Dr. Coulter. [DE 20 at 8]. The Court certainly finds that the ALJ's opinion

was riddled with inconsistencies with regard to her conclusions[4], based upon the medical evidence, which makes it difficult for the Court to follow the ALJ's logical path in reaching the conclusion that Fry is capable of performing medium work.

### 3. Subjective Complaints Analysis

Fry next contends the ALJ engaged in flawed reasoning in her dismissal of Fry's subjective complaints, and erred in finding Fry capable of sustained work activities at the medium level. [*Id.* at 14-16]. This is another area within the ALJ's decision that is undermined by inconsistency. The ALJ provided a comprehensive listing of Fry's impairments as part of the two-step analysis of all of Fry's symptoms. 20 C.F.R. § 404.1529. First, the ALJ determined whether there were underlying medical determinable physical or mental impairments. Then the ALJ, after determining whether the impairments could reasonably be expected to produce Fry's pain and symptoms, evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent that they limit her functioning. Upon review of the medical record and evidence, the ALJ concluded that "the claimant's medically determinable impairments

---

[4] The Court also recognizes other potential problems within the ALJ's RFC statement. Specifically, the ALJ seemed to ignore the statement in Dr. Coulter's MSS that Fry was "[a]ble to stand/walk 2 hours in an 8 hour day." [DE 11 at 841]. According to 20 C.F.R. § 404.1567(b), "to be considered capable of performing . . . light work, you must have the ability to do substantially all of these activities," which include lifting no more than 20 pounds, frequent lifting or carrying up to 10 pounds, a good deal of walking or standing, or a job that requires sitting most of the time. Dr. Coulter's MSS would suggest that Fry would struggle with even light work due to her ability to stand for only two of eight hours. This MSS is consistent with the determination made by the ALJ at Step Four, a serious inconsistency in the logical bridge. Additionally, when the ALJ stated, "Secondary to mental impairments, the claimant could understand, remember, and carry out detailed but uninvolved work instructions, commensurate with unskilled work." [DE 11 at 214-15]. The Court is not clear what is meant by this phrasing used by the ALJ, and it does not help clarify for the Court the logical bridge developed by the ALJ. It seems that mental impairments were found, and the ALJ concluded that Fry was suited for unskilled work in her RFC determination, but it is unclear what was meant in the RFC statement.

could reasonably be expected to cause some of the alleged symptoms, but finds her statements concerning the intensity, persistence, and limiting effects of these symptoms to be *consistent* with the limitations established in her residual functional capacity." [DE 11 at 219] (emphasis added). The limitations consistent with the medium work RFC would suggest that Fry is not able to perform the tasks delineated in 20 C.F.R. § 404.1567(c). This is a confusing finding of the ALJ, which may be the result of a simple erroneous use of the word "consistent" rather than "inconsistent" in the ALJ's subjective complaints analysis. However, this confusion calls into question the ALJ's decision, in terms of the logical bridge, and is sufficient to justify remand by this Court.

## C.    New and Material Evidence Before the Appeals Council

Finally, Fry argues that new material evidence was submitted to the Appeals Council, which creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered. [DE 20 at 19]. Specifically, Fry claims that within days of the ALJ's decision, she underwent a decompensation that led to her hospitalization for psychotic symptoms. [*Id.* at 18].

The Appeals Council uses a two-part test to determine if new evidence should be considered. *See* 42 U.S.C. § 405(g); *Perkins v. Charter*, 107 F.3d 1290, 1294 (7th Cir. 1997) (citing 20 C.F.R. § 404.970(b)). The threshold requirement for review is that the submitted evidence be new, material, and relevant to the adjudicated period. 20 C.F.R. § 404.970(b). If the evidence meets this threshold standard, then the Appeals Council looks to the entire augmented record to determine if the ALJ's decision is contrary to the weight of the evidence. *See Perkins*, 107 F.3d at 1290. Evidence is not new when it

was "not in existence or available to the claimant at the time of the administrative proceeding." *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).

Fry argues that the decompensation and hospitalization she experienced in June 2016, after the release of the ALJ's decision on May 27, 2016, were an exacerbation of her existing, chronic psychological symptoms. [DE 26 at 6]. The ALJ issued her decision in the Fry matter on May 27, 2016. The Appeals Council examined Fry's treatment records from the period June 1, 2016 through August 15, 2016, but found that this evidence Fry submitted related to a period after the date of the ALJ's decision; therefore, the Appeals Council found the evidence was not time-relevant in reference to the ALJ's decision. [DE 11 at 6]. The Appeals Council recommended that Fry apply for benefits again to determine whether she was disabled after the ALJ's decision on May 27, 2016. [*Id.*]. Although, as Fry argues, the decompensation that occurred after the release of the ALJ's decision may have been an exacerbation of Fry's existing impairments, the Appeals Council was correct that this event transpired at a time that does not relate to the period on or before the ALJ's decision; therefore, it would not be appropriate for this Court to remand on the issue of new and material evidence.

V.  CONCLUSION

For the reasons stated above, this Court concludes that the ALJ's decision was not supported with substantial evidence, and was subject to critical inconsistencies between the evidence and the ALJ's conclusion.   However, the Court finds that the claim of now and relevant evidence before the Appeal's Council is not supported by the record, and a remand to Appeals Council is **DENIED**.

The Court now **REMANDS** this case to the Acting Commissioner for further proceedings consistent with this opinion. The Clerk is **ORDERED** to enter judgement in favor of the Plaintiff.

**SO ORDERED**

Dated this 28th day of September 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
